UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC.; ROBERT NASH,

             *Plaintiffs*,

    -against-

GEORGE P BEACH II; RICHARD J MCNALLY JR., NYS
Supreme Court Judge,

             *Defendants*.

18-CV-0134

BKS/ATB

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

          ERIC T. SCHNEIDERMAN
          Attorney General of the State of New York
          Attorney for Defendants George P. Beach and
            Richard J. McNally
          The Capitol
          Albany, New York  12224-0341

Kelly L. Munkwitz
Assistant Attorney General, of Counsel
Bar Roll No. 509910
Telephone:  (518) 776-2626
Fax:  (518) 915-7738 (Not for service of papers)        Date: March 26, 2018

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTS ........................................................................................................................................ 1

ARGUMENT . ............................................................................................................................ 3

POINT I ...................................................................................................................................... 4

    BECAUSE THE HOLDING IN KACHALSKY IS CONTROLLING, THE
        COMPLAINT MUST BE DISMISSED ........................................................................... 4

POINT II . ................................................................................................................................... 9

    THE CLAIM BROUGHT BY NYSRPA SHOULD BE DISMISSED ON THE
        ADDITIONAL BASIS THAT NYSRPA LACKS STANDING TO PURSUE
        FACIAL CONSTITIONAL CHALLENGES LIKE THIS ONE ........................................ 9

CONCLUSION ........................................................................................................................ 10

**PRELIMINARY STATEMENT**

This Memorandum of Law is respectfully submitted on behalf of defendants New York State Police Superintendent George P. Beach II and the Honorable Richard J. McNally, Jr. (collectively "defendants") and in support of their motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In *Kachalsky v. County of Westchester*, the Second Circuit definitively held that New York's handgun licensing scheme, which requires an applicant to demonstrate "proper cause" to obtain a license to carry a concealed handgun in public, does not violate the Second Amendment to the United States Constitution. Despite the Second Circuit's ruling, plaintiffs now mount a facial challenge to the constitutionality of New York's Penal Law section 400.00(2)(f) – the very statute at issue in *Kachalsky*. Because *Kachalsky*, which was properly decided, is binding precedent, the Complaint fails to state a cause of action and must be dismissed.

**FACTS**

Plaintiff New York State Rifle & Pistol Association, Inc. (NYSRPA) is a "group organized to support and defend the right of New York residents to keep and bear arms." Complaint, Dkt. # 1, ¶ 11. It purports to have thousands of members who live in New York, including plaintiff Robert Nash. *Id*. Plaintiff Nash lives in Averill Park, New York and owns several handguns. Complaint, Dkt. # 1, ¶¶ 10, 23. As of March 12, 2015, plaintiff Nash also possesses a firearm[1] license for home possession and which is marked "Hunting, Target only." Complaint, Dkt. # 1, ¶ 24. Plaintiff Nash's permit allows him to carry a handgun outside of his

---

[1] A "firearm" is defined under New York law to include pistols and revolvers; shotguns with barrels less than eighteen inches in length; rifles with barrels less than sixteen inches in length; "any weapon made from a shotgun or rifle" with an overall length of less than twenty-six inches; and assault weapons. Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85. Rifles and shotguns are otherwise not subject to New York's licensing provisions. Penal Law § 265.00(3); *see Kachalsky*, 701 F.3d at 85. Plaintiff may have long guns which he is free to keep at home or to carry without a license.

1

home for hunting and target shooting, including "carrying concealed for the purposes of off road back country, outdoor activities similar to hunting, for example, fishing, hiking & camping, etc." Dkt. # 1, Ex. 2.  According to the Complaint, plaintiff Nash does not face any special or unique danger to his life.  Dkt. # 1, ¶ 23.

Defendant Richard J. McNally, Jr. is a Justice of the New York Supreme Court, Third Judicial District.  Complaint, Dkt. #1, ¶ 13.  He is sued in his official capacity.  Justice McNally is a Licensing Officer for Rensselaer County under Penal Law section 400.00.  In that role, "he is responsible for receiving applications, investigating the applicant, and either approving or denying the application" for a handgun license.  Complaint, Dkt. #1, ¶ 13.  Defendant George P. Beach II is the Superintendent of the New York State Police.  He is sued in his official capacity, presumably because his agency is one of the law enforcement agencies in New York State that enforces the New York Penal Law.  *See* Complaint, Dkt. # 1, ¶ 12.  Superintendent Beach also approves the form that a person seeking a license to carry a concealed handgun must submit. Complaint, Dkt. #1, ¶ 15.

On September 5, 2016, plaintiff Nash applied to Justice McNally to have the hunting and target restrictions removed from his license and have Judge McNally issue plaintiff Nash a license that would permit him to carry a concealed handgun in public.  Complaint, Dkt. #1, ¶ 26. Although plaintiff Nash owns handguns that he "keeps in his home to defend himself and his family", he cited "a string of recent robberies in his neighborhood" as justification for his application.  Complaint, Dkt. #1, ¶¶23, 26.  Justice McNally held an informal hearing to determine whether plaintiff Nash could establish "proper cause".  Complaint, Dkt. #1, ¶¶ 27-28. Section 400.00(2)(f) of New York's Penal Law requires a finding of proper cause before a Licensing Officer may issue a permit to carry a concealed firearm in public.  Complaint, Dkt. #1,

¶¶ 15-17.  Justice McNally found that plaintiff did not establish proper cause because he "did not demonstrate a special need for self-defense that distinguishes him from the general public." Complaint, Dkt. #1, ¶ 28.  Plaintiff Nash continues to maintain his license that permits him to use his handguns for hunting and target use, as well as protection in the home.  Complaint, Dkt. #1, ¶ 27.

Plaintiffs now challenge the constitutionality of New York Penal Law section 400.00(2)(f), citing to *Wrenn v. District of Columbia*, a recent case out of the D.C. Circuit.  Because the Second Circuit has established that the statute is constitutional, the Complaint must be dismissed.

## ARGUMENT

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Reeve v. Murabito*, No. 13-cv-712, 2013 U.S. Dist. LEXIS 163359, at *4 (N.D.N.Y. Nov. 15, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id*.  The complaint must "allege 'more than a sheer possibility that a defendant has acted unlawfully' and more than 'facts

that are merely consistent with a defendant's liability.'" *Id.* (internal quotation marks omitted). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009). Here, plaintiffs acknowledge that the Complaint is contrary to the Second Circuit's decision in *Kachalsky*. By the very language of the Complaint, plaintiffs fail to state a claim for relief.

**POINT I**
**BECAUSE THE HOLDING IN *KACHALSKY* IS**
**CONTROLLING, THE COMPLAINT MUST BE DISMISSED**

Plaintiffs assert that the Second Circuit wrongly decided *Kachalsky* for the reasons explained in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), and seek from this Court a declaration that New York Penal Law section 400.00(2)(f) violates the Second Amendment to the United States Constitution. They further seek injunctive relief and attorney fees. This Court may not provide the relief sought. *Newsom-Lang v. Warren Int'l*, 129 F. Supp.2d 662, 664 (S.D.N.Y. 2001).

District courts are bound by the applicable Circuit precedent. *Id.*; *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003). "This Court must follow binding precedent from the Second Circuit." *Preston v. Berryhill*, 254 F. Supp. 3d 379, 384-385 (N.D.N.Y. 2017) (citing *United States ex rel. Schnitzler v. Follette*, 406 F.2d 319, 322 (2d Cir. 1969)). Even if this Court finds the holding in *Wrenn* more persuasive, it may not substitute its own judgment for that of the Second Circuit. "'Rather, lower courts should follow the case which directly controls, leaving to [the Circuit] Court the prerogative of overruling its own decisions.'" *Windsor v. United States*, 699 F.3d 169, 195 (2d Cir. 2012) (quoting *Agostini v. Felton*, 521 U.S. 203, 207,

117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997)) (alteration added); *see also United States v. Diaz*. 122 F. Supp.3d 135, 168 (S.D.N.Y. 2015), *aff'd* 2017 U.S. App. LEXIS 6579 (2d Cir. Apr. 18, 2017).

It is undisputed that the holding in *Kachalsky* is controlling here. *See* Complaint, Dkt. #1, ¶ 6 (noting the relief sought is contrary to *Kachalsky*); ¶¶ 5, 15-19 (setting forth facts that challenge section 400.00(2)(f) of New York's Penal Law, specifically the requirement that an applicant show "proper cause" to obtain a license to carry a concealed firearm); *Kachalsky v. County of Westchester*, 864 F.3d 81, (2d Cir. 2012) (finding the issue to be whether New York's firearm licensing scheme, which requires an applicant to demonstrate "proper cause" to obtain a license to carry a concealed handgun in public, violates the Second Amendment).

While this Court's inquiry necessarily ends upon review of the Complaint and the decision in *Kachalsky*, it is noteworthy that the D.C. Circuit's decision in *Wrenn* adds nothing to the Second Circuit's decision in *Kachalsky*. Indeed, the arguments accepted by the *Wrenn* court were considered and rejected by the Second Circuit. For example, the D.C. Circuit found that the ability to carry a firearm outside of the home was a central or core component to the Second Amendment's right to keep and bear arms. *Wrenn v. District of Columbia*, 864 F.3d 650, 657 (D.C. Cir. 2017). The Second Circuit flatly rejected that same argument, finding that the ability to carry weapons outside of the home did not constitute a "core" component to the Second Amendment. *Kachalsky v. District of Columbia*, 701 F.3d 81, 93 (2d Cir. 2012)("Heller explains that the 'core' protection of the Second Amendment is the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"); *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 791 (2010).

The Second Circuit and the D.C. Circuit also differ in the manner they view the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783, 171 L.Ed.2d

5

637 (2008) and the manner in which they treat the various states' historic regulation of weapons. *See Wrenn*, 864 F.3d at 662 (distinguishing *Kachalsky*). While *Wrenn* was decided after *Kachalsky*, the Second Circuit (and courts within it) continues to rely upon *Kachalsky* as controlling. *See, e.g.*, *New York State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45 (2d Cir. 2018); *Libertarian Party v. Cuomo*, 2018 U.S. Dist. LEXIS 4543, 2018 WL 353181 (W.D.N.Y. 2018). In fact, the Second Circuit specifically considered and rejected the reasoning in *Wrenn*. In *New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, the Second Circuit stated:

> We are aware that a divided panel of the Seventh Circuit and a divided panel of the District of Columbia Circuit have disagreed with Kachalsky. *See Moore v. Madigan*, 702 F.3d 933, 941 (7th Cir. 2012); *Wrenn v. District of Columbia*, 864 F.3d 650, 662 (D.C. Cir. 2017). After giving careful and respectful attention to the reasoning of those opinions, we reaffirm our prior holding, by which this panel is, in any event, bound. We also recognize that the Third and Fourth Circuits have adopted reasoning similar to ours in upholding various state regulations on the carrying of firearms outside the home. *See Drake v. Filko*, 724 F.3d 426, 433 (3d Cir. 2013); *Woollard v. Gallagher*, 712 F.3d 865, 880–81 (4th Cir. 2013). The Ninth Circuit upheld a similar regulation on other grounds. *Peruta v. Cty. of San Diego*, 824 F.3d 919, 924 (9th Cir. 2016) (en banc) (holding that "the Second Amendment does not ... protect a right of a member of the general public to carry concealed firearms in public"), cert. denied sub nom. *Peruta v. California*, ––– U.S. ––––, 137 S.Ct. 1995, 198 L.Ed.2d 746 (2017).

883 F.3d at 56 n.5. Plaintiffs' argument that after the *Wrenn* decision, the Second Circuit should revisit *Kachalsky* as it was "wrongly decided" is unfounded.

The Second Circuit's well-reasoned analysis in *Kachalsky* includes discussion of New York's longstanding history of firearm regulation, 701 F.3d at 84-85, the Supreme Court's decision in *Heller*, *id.* at 88-94, various states' historical regulation of firearms in public places, *id.* at 89-90, 95-96, and historical and current studies that address the potential danger of concealed handguns in public places, *id.* at 84-85, 99. While not relevant to the issue before this

6

Court, as the *Kachalsky* decision is controlling, it is noteworthy that more recent studies are even more compelling than those considered by the Second Circuit in *Kachalsky*.

Plaintiffs essentially ask that New York move to become a "shall issue" state, where licensing officials have little to no discretion and where applicants need not show "proper cause" to have unrestricted license to carry concealed handguns in public.  Recent studies have shown that violent crime increases 12.3% after states move from laws requiring a showing of a need to carry firearms in public places to a more permissive system, with the effect increasing by 1.1% each year thereafter.[2] John Donohue Study discussed in Webster, et al. *Firearms on College Campuses: Research Evidence and Policy Implications* (2016) (available at https://www.jhsph.edu/research/centers-and-institutes/johns-hopkins-center-for-gun-policy-and-research/_pdfs/GunsOnCampus.pdf).

Other recent empirical evidence also strongly demonstrates that licensing laws regulating the public carrying of guns, like New York's, substantially advance the state's compelling interests in protecting its citizens from gun violence.  Research now shows that handgun permit and licensing laws are "[t]he type of firearm policy most consistently associated with curtailing the diversion of guns to criminals and for which some evidence indicates protective effects against gun violence."  Daniel W. Webster & Garen J. Wintemute, *Effects of Policies Designed to Keep Firearms from High-Risk Individuals*, 36 Ann. Rev. Pub. Health 21, 34 (2015)(available at https://www.annualreviews.org/doi/full/10.1146/annurev-publhealth-031914-122516).

The vast majority of firearms-related homicides -- approximately 90% in 2015 – are committed with handguns.  States where handgun licensing laws leave licensing officials with

---

[2] The Court may properly take judicial notice of "studies and data" in assessing Plaintiffs' Second Amendment claim.  *Kachalsky*, 701 F.3d at 97-99; *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo, 804 F.3d at 261–62*; *see also, e.g.*, *Snell* v. *Suffolk Cnty.*, 782 F.2d 1094, 1105-06 (2d Cir. 1986) (holding that social science studies can be reviewed by courts as "legislative facts").

little or no discretion (referred to as "shall-issue states") are associated with significantly higher rates of total (6.5%), firearm-related (8.6%), and handgun-related (10.6%) homicide when compared with "may-issue" states like New York. *See, e.g.,* Michael Siegel, et. al., *Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States* (2017) (available at http://ajph.aphapublications.org/doi/full/10.2105/AJPH.2017.304057). In those states that move from handgun licenses to "right to carry" handgun laws, violent crime increases an average of 12.3%, with the effect increasing by 1.1% each year the change is in effect. Another comprehensive study found that shall-issue laws increase violent crime and murder, including a 13-15% increase in violent crime after ten years and small increases in property crime and homicide. John Donohue, *Right to Carry laws and Violent Crime: a Comprehensive Assessment Using Panel Data and a State Level Synthetic Controls Analysis* (2017). Shall-issue laws are also associated with an increase in aggravated assault generally and a 33% increase in gun-related aggravated assault. Abhey Aneja & John Donohue, *The Impact of Right to Carry Laws and the NRC report: the Latest Lessons for the Empirical Evaluation of Law and Policy* (2012)(available at http://www.nber.org/papers/w18294.pdf).

     Two important examples of the import of handgun licensing laws are found in the experiences in Missouri and Connecticut. Missouri's repeal of its handgun licensing law, in 2007, was associated with a 14% increase in the state's annual murder rate and an increase of 25% in its rate of firearm homicides. Daniel Webster et al., *Effects of the Repeal of Missouri's Handgun Purchaser Licensing Law on Homicides*, 91 J. Urban Health 293 (2014) (erratum: 91 J. Urban Health 598 (2014)) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3978146/ and https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4074329/). Yet another study examined the

8

impact of Connecticut's handgun licensing law and found that it was associated with a 40% reduction in that state's firearm homicide rate. Kara E. Rudolph et al., *Association Between Connecticut's Permit-to-Purchase Handgun Law and Homicides*, 105 Am. J. Pub. Health e49 (2015)(available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4504296/). Notably, in both Missouri and Connecticut, no "substitution effect" was observed, meaning criminals did not just switch to other weapons when they failed to obtain firearms.

These recent studies are not dispositive here. This Court is bound by the Second Circuit's previous decisions in *Kachalsky* and *NYSRPA v. City of New York*, 883 F.3d at 57. Nevertheless, it is perhaps because of the strength of the empirical evidence showing that New York's licensing laws, including the "proper cause" requirement, substantially advance the State's compelling interest in public safety that the plaintiffs simply ask the Court to set aside *Kachalsky* as "wrongly decided" and to blindly follow *Wrenn*.

## POINT II
### THE CLAIM BROUGHT BY NYSRPA SHOULD BE DISMISSED ON THE ADDITIONAL BASIS THAT NYSRPA LACKS STANDING TO PURSUE FACIAL CONSTITUTIONAL CHALLENGES LIKE THIS ONE.

The organizational plaintiff, NYSRPA, lacks standing. NYSRPA alleges in the Complaint that that the challenged statutes are "a direct affront" to its "central mission" and that it brings suit to "support and defend" that rights of New York residents and its members to carry firearms outside the home. Dkt. # 1, ¶ 11. But in a 42 U.S.C. § 1983 action like this one, an organization may bring suit only "on its own behalf, rather than that of its members." *N.Y. State Citizens' Coal. for Children v. Velez*, No. 14-2919-cv, 2015 U.S. App. LEXIS 18805, at *3 (2d Cir. Oct. 29, 2015) (summary order); *see, e.g.*, *Knife Rights Inc. v. Vance*, 802 F.3d 377, 387-89 (2d Cir. 2015); *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). The Complaint is silent as to

9

any injury that NYSRPA itself has sustained, let alone one that would give rise to standing in this case. *See, e.g.*, *Kachalsky*, 817 F. Supp. 2d at 251 (holding that an organizational plaintiff's allegations "that it 'promote[s] the exercise of the right to keep and bear arms and engages in 'education, research, publishing and legal action focusing on the [c]onstitutional right to privately own and possess firearms' . . . are plainly insufficient to give rise to standing").

## CONCLUSION

By its own terms, the Complaint runs counter to the Second Circuit Court of Appeals decision in *Kachalsky v. County of Westchester*. Because *Kachalsky* is binding precedent on this Court, the Complaint must be dismissed.

Dated: Albany, New York
March 26, 2018

                                      ERIC T. SCHNEIDERMAN
                                      Attorney General of the State of New York
                                      Attorney for Defendants George P. Beach and
                                                Richard J. McNally
                                      The Capitol
                                      Albany, New York  12224-0341

                                      By: *s/ Kelly L. Munkwitz*
                                      Kelly L. Munkwitz
                                      Assistant Attorney General, of Counsel
                                      Bar Roll No. 509910
                                      Telephone:  (518) 776-2626
                                      Fax:  (518) 915-7738 (Not for service of papers)
                                      Email: Kelly.Munkwitz@ag.ny.gov

TO:    Kathleen McCaffrey Baynes, Esq. (via ECF)
          KATHLEEN MCCAFFREY BAYNES, ESQ., PLLC
          21 Everett Road Extension, Suite A-4
          Albany, NY  12205

John D. Ohlendorf, Esq. (via ECF)
COOPER & KIRK, PLLC


Peter A. Patterson, Esq. (via ECF)
COOPER & KIRK, PLLC


David H. Thompson, Esq. (via ECF)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC  20036

11