UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RIFLE & PISTOL
ASSOCIATION, INC.; ROBERT NASH; and
BRANDON KOCH,

                        1:18-cv-00134 (BKS/ATB)

                      Plaintiffs,

v.

GEORGE P. BEACH II, in his official capacity as
Superintendent of the New York State Police; and
RICHARD J. MCNALLY, JR., in his official capacity as
Justice of the New York Supreme Court, Third Judicial
District, and Licensing Officer for Rensselaer County,

                      Defendants.

---

**Appearances:**

*For Plaintiffs:*

Kathleen McCaffrey Baynes
Kathleen McCaffrey Baynes, Esq., PLLC
21 Everett Road Extension, Suite A-4
Albany, NY 12205

David H. Thompson
Peter A. Patterson
John D. Ohlendorf
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036

*For Amicus Curiae Everytown for Gun Safety:*
Ilann M. Maazel
O. Andrew F. Wilson
Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020

*For Defendants:*

Kelly L. Munkwitz
Assistant Attorney General, of Counsel
Barbara D. Underwood
Attorney General of the State of New York
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiffs New York State Rifle & Pistol Association, Inc. ("NYSRPA"), Robert Nash, and Brandon Koch (together with Nash, the "Individual Plaintiffs") bring this action under 42 U.S.C. § 1983, alleging that Defendants George P. Beach II and Richard J. McNally, Jr. violated Plaintiffs Nash and Koch's Second Amendment rights when they refused to grant them licenses to carry a firearm outside the home for self-defense. (Dkt. No. 31, ¶ 5).[1] Plaintiffs seek declaratory and injunctive relief, as well as costs and attorneys' fees. (*Id*. ¶ 47). On March 26, 2018, Defendants moved to dismiss Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Dkt. No. 19), primarily asserting that Plaintiffs' claims fail as a matter of law because this Court is bound by the Second Circuit's holding in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012). Plaintiffs oppose the motion, but concede that this Court is bound by *Kachalsky*. (Dkt. No. 26, at 7-8, 11). With leave of the Court, amicus curiae Everytown for Gun Safety ("Everytown") has filed a brief in support of Defendants' motion. (Dkt. No. 25). For the reasons below, Defendants' motion is granted.

---

[1] The Court granted Plaintiffs' motion for leave to amend the original complaint on May 16, 2018. (Dkt. No. 30). By agreement of the parties, the Amended Complaint (Dkt. No. 31) was substituted as the operative pleading without need to refile the instant motion (Dkt. No. 19), or any of the subsequently-filed briefs, (Dkt. Nos. 25, 26, 27). *See Cangemi v. United States*, 939 F. Supp. 2d 188, 193 n.2 (E.D.N.Y. 2013) (applying a motion to dismiss to an amended complaint "although technically [the motion to dismiss was] filed before Plaintiffs amended").

## II. BACKGROUND[2]

### A. Firearm Regulations in New York State

New York law generally prohibits the possession of a firearm[3] absent a license. (Dkt. No. 31, ¶ 15 (citing N.Y. Penal Law §§ 265.01 and 265.20(a)(3))). A general member of the public may apply for a handgun carry license (the "License") to carry a concealed handgun for the purposes of self-defense, which a licensing officer must approve. (*Id*. ¶ 16). A licensing officer must determine whether a person meets the statutory requirements of New York Penal Law § 400.00 before the officer can grant a license. (*Id*. ¶¶ 16–17). New York Penal Law § 400.00(2)(f) requires that an applicant show that "proper cause exists for the issuance thereof." (*Id*. ¶ 18). Some licensing officers note restrictions on the license, such as "hunting and target," and refer to those licenses as "restricted licenses." (*Id*. ¶ 19). These licenses "allow the licensee to carry a firearm only when engaged in those specified activities" but do not "permit the carrying of a firearm in public for the purpose of self-defense." (*Id*.). Licensing officers have "some discretion in determining what constitutes 'proper cause,'" but "this discretion is cabined by the significant body of New York case-law." (*Id*. ¶ 20). Under that caselaw, the applicant must "demonstrate a special need for self-protection distinguishable from that of the general community" to satisfy the proper cause standard. (*Id*.).

---

[2] All facts, which are taken from the Amended Complaint and exhibits attached thereto, are assumed to be true for purposes of this motion. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[3] A "firearm" is defined as "(a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon." N.Y. Penal Law § 265.00(3). Rifles and shotguns are otherwise not subject to the licensing provisions of the statute. *Kachalsky*, 701 F.3d at 85.

3

B.  **Plaintiff NYSRPA**

Plaintiff NYSRPA "has at least one member" who "would forthwith carry a firearm outside the home for self-defense," but the member(s) cannot "satisfy the 'proper cause' requirement." (*Id*. ¶ 40). NYSRPA is "organized to support and defend the right of New York residents to keep and bear arms." (*Id*. ¶ 12). The New York firearm regulations limiting the "public carrying of firearms" is a direct "affront to [its] central mission." (*Id*.). Both Nash and Koch are members of NYSRPA. (*Id*.).

C.  **Plaintiffs Robert Nash and Brandon Koch**

Plaintiffs Nash and Koch do not fall within any exception under New York Penal Law § 265.20 to New York's ban on carrying firearms in public. (*Id*. ¶¶ 22, 31). While they meet many of the statutory requirements to obtain a handgun carry license under New York Penal Law § 400.00, (*id*. ¶¶ 23, 32), Nash and Koch do not satisfy the "proper cause" requirement because they do not "face any special or unique danger to [their] life" nor are they "entitled to a Handgun Carry License by virtue of [their] occupation, pursuant to Penal Law § 400.00(2)(b)–(e)." (*Id*. ¶¶ 24, 33). Instead, Nash and Koch "desire to carry a handgun in public for the purpose of self-defense." (*Id*.).

On or about September 2014, Plaintiff Nash "applied to the Licensing Officer . . . for a license to carry a handgun in public"; his application was granted on March 12, 2015, but he was "issued a license marked 'Hunting, Target only.'" (*Id*. ¶ 25). Nash's license does not permit him to "carry a firearm outside of his home for the purpose of self-defense." (*Id*. ¶ 26). On September 5, 2016, Nash requested that the licensing officer, Defendant McNally, "remove the 'hunting and target' restrictions from his license and issue him a license allowing him to carry a firearm for self-defense." (*Id*. ¶ 27). In support of his request, Nash "cited a string of recent robberies in his neighborhood and the fact that he had recently completed an advanced firearm safety training

4

course." (*Id*.). On November 1, 2016, "after an informal hearing, Defendant McNally denied Mr. Nash's request." (*Id*. ¶ 28). McNally denied the request because Nash "failed to show 'proper cause' to carry a firearm in public for the purpose of self-defense, because he did not demonstrate a special need for self-defense that distinguished him from the general public." (*Id*. ¶ 29). Currently, Nash "refrain[s] from carrying a firearm outside the home for self-defense" but "would carry a firearm in public for self-defense in New York were it lawful for him to do so." (*Id*. ¶ 30).

Plaintiff Koch "was granted a license to carry a handgun in public by the Licensing Officer" in 2008. (*Id*. ¶ 34). The license, however, was "marked 'Hunting & Target'"; Koch is therefore unable "to carry a firearm outside of his home for the purpose of self-defense." (*Id*. ¶¶ 34–35). In November 2017, Koch requested that Defendant McNally "remove the 'hunting and target' restrictions from his license and issue him a license allowing him to carry a firearm for self-defense." (*Id*. ¶ 36). Koch cited "his extensive experience in the safe handling and operation of firearms and the many safety training courses he had completed" in support of his request. (*Id*.). On January 16, 2018, McNally denied Koch's request because he "failed to show 'proper cause' to carry a firearm in public for the purpose of self-defense, because he did not demonstrate a special need for self-defense that distinguished him from the general public." (*Id*. ¶¶ 37–38). Koch "continues to refrain from carrying a firearm outside the home for self-defense" but "would carry a firearm in public for self-defense in New York were it lawful for him to do so." (*Id*. ¶ 39).

### III. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

IV.   **DISCUSSION**

    A.   **Standing**

Defendants argue that NYSRPA lacks standing to bring this case on behalf of the Individual Plaintiffs. "For federal courts to have jurisdiction over" a party's asserted claims, however, "only one named plaintiff need have standing with respect to each [of those] claims." *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994); *accord Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("At least one plaintiff must have standing to seek each form of relief requested in the complaint."). Although NYSRPA's failure to allege any institutional injury may be "plainly insufficient to give rise to standing," *Kachalsky v. Cacase*, 817 F. Supp. 2d 235, 251 (S.D.N.Y. 2011), Defendants do not dispute that Plaintiffs Nash and Koch, as individuals, have standing to bring the claims asserted. (Dkt. No. 19-1, at 11–12). Accordingly, the Court need not address the issue further here.

6

B.  *Kachalsky v. County of Westchester*

Defendants move to dismiss Plaintiffs' claims on the grounds that Plaintiffs' Second Amendment[4] claims are directly contrary to the Second Circuit's holding in *Kachalsky v. County of Westchester*, 701 F.3d 81 (2d Cir. 2012). (Dkt. No. 19-1, at 6–11).

In *Kachalsky*, the court held that "New York's handgun licensing scheme . . . requiring an applicant to demonstrate 'proper cause' to obtain a license to carry a concealed handgun in public" did not violate the Second Amendment. 701 F.3d at 83, 100–01. The facts of that case are substantially identical to the facts presently before the Court. There, a licensing officer denied the plaintiffs' applications for handgun carry licenses because they failed to demonstrate "proper cause" within the meaning of New York Penal Law § 400.00(2)(f), as they did not "show any facts demonstrating a need for self-protection distinguishable from that of the general public." *Id.* at 88. The plaintiffs challenged that determination arguing, *inter alia*, that the protections afforded by the Second Amendment entitled them to an unrestricted permit without establishing proper cause, and that individuals of "good standing" in their community need not prove anything more to demonstrate "proper cause." *Id.* at 87. The district court granted the state's cross-motion for summary judgment, holding that New York Penal Law § 400.00(2)(f) "does not burden recognized protected rights under the Second Amendment," and explaining further that, even if "Section 400.00(2)(f) could be read to implicate such rights, the statute, as applied to Plaintiffs, does not violate the Second Amendment under intermediate scrutiny." *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 272 (S.D.N.Y. 2011). The plaintiffs appealed on the grounds that "the proper cause provision, on its face or as applied to them, violates the Second

---

[4] As Plaintiffs allege, "the Second Amendment applies to Defendants," (Dkt. No. 31, ¶ 46), because the "the Fourteenth Amendment 'incorporates' the Second Amendment against the states." *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)).

7

Amendment as interpreted by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008)." *Kachalsky*, 701 F.3d at 84. The Second Circuit, however, affirmed the district court's application of intermediate scrutiny, holding that "New York has substantial, indeed compelling, governmental interests in public safety and crime prevention," and "the proper cause requirement is substantially related to these interests." *Id.* at 97.

Here, Plaintiffs' constitutional challenge to New York Penal Law § 400.00(2)(f) is virtually identical to that in *Kachalsky*, 701 F.3d at 83–84, and, as Plaintiffs acknowledge, this Court is required to follow the binding precedents set by the Second Circuit. *Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003); *Preston v. Berryhill*, 254 F. Supp. 3d 379, 384–385 (N.D.N.Y. 2017). Plaintiffs acknowledge that the result they seek is contrary to *Kachalsky*, but believe that case was wrongly decided for the reasons explained by the District of Columbia Circuit in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017). (Dkt No. 31, ¶ 6). In *Wrenn*, a divided panel held invalid a District of Columbia statute which "direct[ed] the District's police chief to promulgate regulations limiting licenses for the concealed carry of handguns . . . to those showing a 'good reason to fear injury to [their] person or property' or 'any other proper reason for carrying a pistol.'" *Wrenn*, 864 F.3d at 655. The court dispensed with tiers-of-scrutiny analysis altogether to reach the conclusion that "the law-abiding citizen's right to bear common arms must enable the typical citizen to carry a gun." *Id.* at 668. Plaintiffs, seeking to have *Kachalsky* overturned, initiated this litigation. (Dkt. No. 31, ¶ 6).[5]

---

[5] The Court notes that the Second Circuit has expressly reaffirmed its reasoning in *Kachalsky* since *Wrenn* was decided. *See N.Y. State Rifle & Pistol Ass'n v. City of New York*, 883 F.3d 45, 56 n.5 (2d Cir. 2018). The plaintiffs there challenged "Title 38, Chapter Five, Section 23 of the Rules of the City of New York ('RCNY'), under which an individual with a 'premises license' for a handgun may not remove the handgun 'from the address specified on the license except'" under limited circumstances. *Id.* at 51–52 (citing 38 RCNY § 5-23(a)(1)). The plaintiffs sought to "transport their handguns to shooting ranges and competitions outside New York City," and one plaintiff wanted "to transport his handgun between the premises for which it is licensed in New York City" and his second home. *Id.* at 54. The Second Circuit, relying on *Kachalsky*, again applied intermediate scrutiny to find a "substantial fit between the Rule and the City's interest in promoting public safety." *Id.* at 64. The court acknowledged *Wrenn*,

8

Accordingly, because the Second Circuit has expressly upheld the constitutionality of New York State Penal Law § 400.00 (2)(f), Plaintiffs' claims must fail. Plaintiffs acknowledge that "the result they seek is contrary to *Kachalsky*," (Dkt. No. 31, ¶ 6), do not dispute that the precedential effect of its holding binds this Court, and have not advanced any other factual allegations suggesting legally plausible claims. The Amended Complaint must therefore be dismissed. *See United States v. Diaz*, 122 F. Supp. 3d 165, 168 (S.D.N.Y. 2015) (explaining that it was "the prerogative of the Second Circuit (or the Supreme Court), not this Court, to decide if" Circuit precedent is contrary to Supreme Court precedent).

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint (Dkt. No. 31) is **DISMISSED with prejudice**;[6] and it is further

**ORDERED** that the Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated: December 17, 2018
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

noting that "a divided panel of the District of Columbia Circuit . . . disagreed with *Kachalsky*," but nevertheless reaffirmed the holding "by which it was, in any event, bound." *Id.* at 56 n.5.

[6] Plaintiffs have not sought leave to further amend the Amended Complaint. Even if they had, "an amendment is not warranted absent some indication as to what [a plaintiff] might add to [his] complaint in order to make it viable." *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) (quotation marks and citation omitted). As discussed in this decision, Plaintiffs' claims are not viable as a matter of law and cannot be fixed by additional factual allegations. Accordingly, amendment is not warranted, and dismissal is with prejudice.

9